UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

LUMILEDS HOLDING B.V.,

             Plaintiff,

  -against-

FIRST BRANDS GROUP, LLC,

             Defendant.

------------------------------------- x

Case No. 24-cv-9556

**COMPLAINT**

Plaintiff Lumileds Holding B.V. ("Lumileds") by and through its undersigned counsel, respectfully submits this complaint for a declaratory judgment and for breach of contract against defendant First Brands Group, LLC ("FBG") on the basis of the following allegations:

**PRELIMINARY STATEMENT**

1. This action arises out of FBG's intentional breach of its obligations under a Stock Purchase Agreement dated as of May 15, 2024 (the "SPA"), pursuant to which FBG agreed to purchase from Lumileds all of the issued and outstanding shares of Lamps Holding B.V. ("Lamps") for a base purchase price of $238 million. Specifically, FBG has breached its obligations under sections 1.6 and 1.7 of the SPA by refusing to pay to Lumileds the full post-closing purchase price adjustment totaling $27,230,000 (the "Purchase Price Adjustment"), as was definitively determined to be due and owing under the terms of the SPA by Deloitte Touche Tomatsu LLC ("Deloitte"), the independent accountant that FBG and Lumileds jointly engaged (pursuant to Section 1.6 of the SPA and a standalone engagement letter signed by the three parties) to calculate the Purchase Price Adjustment.

2. The transaction contemplated by the SPA closed on July 31, 2024 (the "Closing Date"). On the Closing Date, Lumileds received the Closing Payment totaling approximately $149.17 million. A true and correct copy of the SPA is attached hereto as Exhibit 1.[1]

3. The Closing Payment (as compared to the base purchase price described above) was determined based upon estimates of various figures contained in an Estimated Closing Balance Sheet prepared by Deloitte. Recognizing that the Estimated Purchase Price was—as its name suggests—merely an estimate, Lumileds and FBG agreed, in sections 1.6 and 1.7 of the SPA, to a post-Closing Date procedure for the calculation and payment of a Purchase Price Adjustment in the event of a discrepancy between the estimated amounts contained in the Estimated Closing Balance Sheet and the actual amounts as determined by Deloitte after Closing in the Final Closing Statement.

4. On November 7, 2024, Deloitte delivered to FBG and Lumileds the Final Closing Statement in accordance with Section 1.6(a) of the SPA, which reflected adjustments to the calculations set forth in the Estimated Closing Balance sheet, and a resulting Purchase Price Adjustment. A true and correct copy of the Final Closing Statement is attached hereto as Exhibit 2. Based upon the adjustments set forth in the Final Closing Statement, Deloitte determined that FBG owed Lumileds a Purchase Price Adjustment equal to $27,230,000, payable in accordance with Section 1.7(a) of the SPA.

5. Pursuant to Section 1.6(b) of the SPA, FBG agreed that, except in instances of "fraud or manifest error," "the Final Closing Statement delivered by Deloitte pursuant to Section 1.6(a) shall be ***conclusive, final, nonappealable, incontestable by, and binding upon***" FBG.

---

[1] Capitalized terms not otherwise defined have the same meaning as in the SPA.

Exh. 1, SPA § 1.6(b) (emphasis added). FBG further agreed to pay any adjustment determined in accordance with Section 1.6 within five Business Days of delivery of the Final Closing Statement. *Id.* § 1.7(a).

6. Accordingly, absent some basis to claim "fraud or manifest error," FBG was required to pay the Purchase Price Adjustment to Lumileds no later than November 15, 2024, as Lumileds specifically advised FBG by letter dated November 7, 2024.

7. On the evening that such payment was due, however, FBG's counsel delivered a letter to Lumileds vaguely claiming that FBG "has identified information that materially impacts the calculation of the [Purchase Price Adjustment], including information that would result in manifest error." A true and correct copy of FBG's November 15, 2024 letter is attached hereto as Exhibit 3.

8. In its November 15 letter, FBG stated its desire to bring the issue to Deloitte's attention, and committed to deliver to Lumileds just $8.39 million of the $27.23 million calculated by Deloitte to be due and owing. FBG provided no explanation in its letter for its decision to withhold payment of the balance of approximately $19 million.

9. There was no explanation, as was established during a November 18, 2024, teleconference among representatives of FBG, Lumileds, and Deloitte. During that teleconference, FBG admitted, for the first time, that its apparent claim of "manifest error" related only to approximately $9.7 million of the Purchase Price Adjustment.

10. With respect to the disputed $9.7 million, FBG accused Lumileds during the November 18 teleconference of improperly building inventory in that amount outside the ordinary course of business prior to the closing of the transactions contemplated by the SPA (such amount, the "Disputed Inventory Amount"). Consequently, FBG asserted that it should not be obligated to

3

pay for that portion of the Purchase Price Adjustment comprising the Disputed Inventory Amount (but, again, gave no explanation as to why it was not obligated to pay the outstanding portion of the Purchase Price Adjustment that it was not contesting).

11. Lumileds rejected that assertion outright, noting that inventory amounts were fully disclosed and discussed among the parties prior to closing, and there was no basis to revisit that issue now.

12. Nevertheless, as a show of good faith and on the condition that FBG pay the outstanding portion of the Purchase Price Adjustment that it was not contesting, Lumileds agreed to participate in a process whereby FBG and Lumileds would submit documents and information supporting their respective positions concerning the Disputed Inventory Amount, and Deloitte would then deliver a supplemental report to the parties setting forth its findings based on the documents and information provided. The procedures and timeline were discussed and agreed to on numerous calls among representatives from FBG, Lumileds, and Deloitte. FBG also agreed, as part of that process, to pay the outstanding portion of the Purchase Price Adjustment that it was not contesting.

13. In accordance with the agreed-upon procedure, both FBG and Lumileds submitted information supporting their respective positions to Deloitte. A true and correct copy of a PowerPoint presentation submitted by Lumileds to Deloitte on November 25, 2024 is attached hereto as Exhibit 4.

14. The parties thereafter participated in a teleconference with Deloitte on November 29, 2024. During that teleconference, Deloitte made clear that there was no basis for FBG's claim of "manifest error" with respect to the Disputed Inventory Amount. It also was clear

from the discussion on that call that the Purchase Price Adjustment would not be materially different, if it differed at all, from the original calculated amount of $27.23 million.

15. Recognizing that its gambit to avoid payment of the full amount of the Purchase Price Adjustment had failed, FBG effectively cut off communication with Lumileds and Deloitte after the November 29 teleconference.

16. Deloitte nevertheless moved forward with issuing the agreed-upon report on December 10, 2024 (the "Deloitte Report"). A true and correct copy of the Deloitte Report is attached hereto as Exhibit 5.

17. In a detailed analysis based upon the information provided by both parties, the Deloitte Report concluded that the Disputed Inventory Amount of approximately $9.7 million was subject to a downward adjustment "within the range of *$50,000 to $70,000*." Exh. 5, Deloitte Report at 6 (emphasis added). FBG's claim of "manifest error" with respect to the Purchase Price Adjustment therefore was completely baseless.

18. Following the issuance of the Deloitte Report, Lumileds delivered a letter to FBG that same day demanding payment, by no later than December 11, 2024 at 5:00 p.m., of the full Disputed Inventory Amount less $60,000—the midpoint of the range of the downward adjustment set forth in the Deloitte Report. A true and correct copy of Lumileds's December 11, 2024 letter is attached hereto as Exhibit 6.

19. FBG has failed to respond to Lumileds's demand and has refused to pay the Disputed Inventory Amount demanded, in breach of its clear and unequivocal obligations under sections 1.6 and 1.7 of the SPA.

20. FBG's failure to pay the Disputed Inventory Amount has caused, and is continuing to cause, severe and irreparable damage to Lumileds's business, imperiling its ability to continue

5

as a going concern. Through this action, Lumileds seeks, among other things, a preliminary injunction ordering FBG's specific performance of its obligation under Section 1.7(a) of the SPA to pay the Disputed Inventory Amount, which FBG has refused without any legal justification to pay; an award of further damages directly and proximately resulting from FBG's breach of that obligation; and such other and further relief as the Court may deem appropriate under the circumstances of this case.

## PARTIES

21. Plaintiff Lumileds is a Dutch private limited company with its principal place of business located at The Base, Tower B5 Unit 107, Evert van de Beekstraat 1, 1118 CL, Schiphol, The Netherlands. Lumileds, together with its affiliates, is a global manufacturer and distributor of LEDs, light bulbs, and related products for various industries, including the mobile, consumer electronics, industrial, and automotive markets.

22. Defendant FBG is a limited liability company organized and existing under the laws of Delaware with its principal place of business located at 127 Public Square, Suite 5300, Cleveland, Ohio 44114. FBG is global automotive parts company that develops, markets, and sells a variety of products through a portfolio of approximately two-dozen different brands. Upon information and belief, FBG's sole member is Patrick James, a United States citizen domiciled in Ohio.

## JURISDICTION AND VENUE

23. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(4) because Lumileds is a citizen of The Netherlands, the sole member of FBG is a citizen of the United States, and the amount in controversy exceeds $75,000.

24. This Court has personal jurisdiction over FBG because, under Section 10.10 of the SPA, FBG "irrevocably agree[d] that any legal Action arising out of or relating to this Agreement

. . . must be brought . . . in any state or federal court in the State of New York," and "irrevocably submit[ted] to the exclusive jurisdiction of the aforesaid courts for itself and with respect to its property, generally and unconditionally."

25.     Venue in this District is proper because Section 10.10 of the SPA contains an exclusive, mandatory forum selection clause pursuant to which FBG "agree[d] not to commence any Action, suit, or proceeding arising out of or related to this Agreement or any of the transactions contemplated by this Agreement except in the [state and federal courts] in New York," and waived any claim that New York is inconvenient forum or that venue in New York is improper.

## FACTUAL ALLEGATIONS

**A.     The Relevant Provisions of the SPA.**

26.     Lumileds and FBG executed the SPA as of May 15, 2024.  Under Section 1.2 of the SPA, FBG agreed to purchase all issued and outstanding shares of Lumileds's wholly owned subsidiary, Lamps, for a base purchase price of $238 million that was subject to various pre- and post-closing adjustments to be determined in accordance with sections 1.3 and 1.6 of the SPA.

27.     Section 1.3 of the SPA sets forth the procedure for determination of the Estimated Purchase Price.  Under Section 1.3, Lumileds agreed to deliver to FBG an Estimated Closing Balance Sheet setting forth, among other things, the Estimated Purchase Price no less than five Business Days prior to the Closing Date.  Section 1.3 also provided FBG with the opportunity to dispute any items in the Estimated Closing Balance Sheet no later than two Business Days prior to the Closing Date.

28.     Pursuant to Section 1.5(a) of the SPA, FBG agreed to make the Closing Payment, calculated as the difference between the Estimated Purchase Price and the Escrow Amount, one Business Day prior to the Closing to a "Notary Account."  The Escrow Amount thereafter would be temporarily held in escrow by the Escrow Agent under Section 1.5(b), and the Closing Payment

7

would be released from the Notary Account to Lumileds on the Closing Date in accordance with Section 1.5(d).

29.     Under Section 1.6, however, the parties provided a mechanism to adjust the Estimated Purchase Price to account for differences between the estimated figures in the Estimated Closing Balance Sheet underlying the Estimated Purchase Price and the actual figures as determined after the Closing Date.

30.     Specifically, Section 1.6(a) of the SPA requires Deloitte, an accountant jointly hired and paid by Lumileds and FBG (pursuant to Section 1.6 and a standalone engagement letter signed by the parties), to deliver to FBG and Lumileds a Final Closing Statement setting forth "Deloitte's good faith calculations" of the actual figures that had been estimated in the Estimated Closing Balance Sheet prepared and delivered pursuant to Section 1.3.

31.     Under Section 1.6(b), FBG agreed that the Final Closing Statement "shall be ***conclusive, final, nonappealable, incontestable by, and binding*** upon" them, except in instances of "fraud or manifest error," and further agreed that "[a]ny fees and expenses of Deloitte incurred in preparing and delivering the Final Closing Statement . . . shall be borne equally by" FBG and Lumileds.  Exh. 1, SPA § 1.6(b) (emphasis added).

32.     Section 1.7, in turn, sets forth the procedure for settling any payment that must be made as a result of the calculation of the "Final Purchase Price" as determined by the Final Closing Statement under Section 1.6.  Under Section 1.5(c) of the SPA, FBG agreed to "make the payment, if any, required by Section 1.7."

33.     As relevant here, Section 1.7(a) provides that, "[i]n the event the Final Purchase Price *minus* the Escrow Amount is equal to or exceeds the Closing Payment (such excess amount, the 'Seller Adjustment Amount')," then within five Business Days of delivery of the Final Closing

Statement, Lumileds is entitled to: (a) distribution of the Escrow Amount, totaling $2.39 million, pursuant to joint written instructions from FBG and Lumileds to the Escrow Agent; and (b) any excess difference between the Seller Adjustment Amount and the Escrow Amount. Exh. 1, SPA § 1.7(a).

34. The above two amounts collectively are referred to herein as the Purchase Price Adjustment. In short, Purchase Price Adjustment represents the amount by which the Estimated Purchase Price, calculated prior to Closing, underestimated the Final Purchase Price, calculated after Closing.

### B. FBG Refuses to Pay the Full Amount of the Purchase Price Adjustment, in Breach of the SPA.

35. In accordance with Section 1.3 of the SPA, Lumileds delivered to FBG the Estimated Closing Balance Sheet prepared by Deloitte prior to Closing in accordance with the temporal elements set forth in the SPA. The Estimated Closing Balance Sheet set forth an Estimated Purchase Price of $151.56 million, implying a Closing Payment of $149.17 million under Section 1.5(a) of the SPA (i.e., the Estimated Purchase Price *minus* the Escrow Amount). FBG did not dispute the calculations in the Estimated Closing Balance Sheet.

36. On the July 31, 2024 Closing Date, Lumileds fully performed all of its obligations under the SPA to close the transactions contemplated thereby and the transaction successfully closed on that day. The Closing Payment was released to Lumileds on the Closing Date, consistent with Section 1.5(d) of the SPA. The Escrow Amount also was transmitted to the Escrow Agent in accordance with Section 1.5(b).

37. In accordance with Section 1.6(a) of the SPA, Deloitte delivered the Final Closing Statement to FBG and Lumileds on November 7, 2024. Based upon the calculations in the Final

Closing Statement, Deloitte calculated the Purchase Price Adjustment to be $27,230,000. *See* Exh. 2, Final Closing Statement.

38. In light of the calculations in the Final Closing Statement, Lumileds made demand on FBG for payment of the full amount of the Purchase Price Adjustment. Specifically, in accordance with sections 1.5(c) and 1.7(a) of the SPA, Lumileds requested that FBG: (i) execute joint written instructions to the Escrow Agent instructing the Escrow Agent to distribute the funds in the Escrow Account to Lumileds; and (ii) wire payment of the Seller Adjustment Amount within five Business Days.

39. Rather than render the full payment of the Purchase Price Adjustment by November 15, 2024, as the SPA required, FBG delivered a letter to Lumileds in the evening of that day, in which it claimed that the Final Closing Statement purportedly contained an unspecified "manifest error" that justified FBG's withholding of full payment. FBG instead committed only to releasing the funds in the Escrow Account and making an installment payment of $6 million to be credited to the balance of the Purchase Price Adjustment. *See* Exh. 3, 11/15/24 Letter.

40. On the morning of Monday, November 18, 2024, FBG, Lumileds, and Deloitte convened a teleconference to discuss FBG's vague claim of "manifest error" in the Final Closing Statement. During that teleconference, FBG raised concerns—for the first time—about Deloitte's inclusion of the Disputed Inventory Amount in its calculation of the Purchase Price Adjustment. The Disputed Inventory Amount had been transferred to FBG upon closing of the SPA, and the details of the inventory underlying that amount had been disclosed to FBG long before the closing.

41. Specifically, FBG claimed that the Disputed Inventory Amount was overstated and should have been discounted because, according to FBG, Lumileds had not built up the underlying inventory in the ordinary course of business and consistent with past practices. As a result, FBG

claimed that it should not be obligated to pay for the portion of the Purchase Price Adjustment comprising the Disputed Inventory Amount, but left unexplained the basis for its apparent position, implied by its November 15 letter, that it was not obligated to pay the outstanding portion of the Purchase Price Adjustment that it was not contesting.

42. Lumileds sharply disputed FBG's assertions during the November 18 teleconference and made clear that they had no basis, explaining that inventory amounts were fully disclosed and discussed among the parties prior to closing, and FBG had not identified a basis to revisit that issue. Nevertheless, as a show of good faith, and conditioned on FBG's payment of the outstanding portion of the Purchase Price Adjustment that it was not contesting, Lumileds agreed with FBG to a process whereby Deloitte would review additional information on the issue provided by both sides and render a final supplemental report as to the calculation of the Disputed Inventory Amount and its inclusion in the calculation of the Purchase Price Adjustment.

43. The procedures and timeline for completion of Deloitte's work were explicitly discussed and agreed to by representatives of FBG, Lumileds, and Deloitte, including outside counsel for each of FBG and Lumileds. As part of the agreement to this process, FBG agreed to pay, and did pay, the outstanding portion of the Purchase Price Adjustment that it was not contesting.

44. In accordance with the agreed-upon process, discussed during the November 18 teleconference, the parties submitted information in support of their respective positions to Deloitte. In support of its position, Lumileds submitted a PowerPoint presentation to Deloitte on November 25, 2024. *See* Exh. 4.

45. Following submission of that information, FBG, Lumileds, and Deloitte participated in a teleconference on November 29, 2024 to discuss the matter further. During that

teleconference, it was clear that FBG's contention that the Disputed Inventory Amount was the product of a "manifest error" was completely lacking in any basis.

46. Likely recognizing that the writing was on the wall following the November 29 teleconference, FBG cut off communication with Lumileds and Deloitte after that call.

47. Notwithstanding FBG's recalcitrance, Deloitte delivered its report on December 10, 2024. The Deloitte Report concludes, on the basis of the information provided by FBG and Lumileds, that the Disputed Inventory Amount of $9,686,106 is subject to a downward adjustment of only "$50,000 to $70,000." Exh. 5, Deloitte Report at 2, 6. At a minimum, therefore, FBG is entitled to payment of $9,616,106.

48. By letter dated December 10, 2024, Lumileds demanded payment from FBG of the Disputed Inventory Amount less $60,000, which represented the midpoint of Deloitte's estimated range for the downward adjustment of the Disputed Inventory Amount. *See* Exh. 6, 12/10/24 Letter.

49. FBG has not responded to either the Deloitte Report or Lumileds's December 10, 2024 letter, and has refused—without any justification or explanation—to pay any portion of the Disputed Inventory Amount.

50. As noted, FBG agreed in Section 1.6(b) of the SPA that Deloitte's determinations with respect to the Purchase Price Adjustment "shall be ***conclusive, final, nonappealable, incontestable by, and binding***" absent evidence of "fraud or manifest error." Exh. 1, SPA § 1.6(b) (emphasis added). The Deloitte Report conclusively establishes that there was never any basis for FBG's claim of "manifest error," and the Disputed Inventory Amount now is incontestably due and owing.

51. As of the date of this complaint, however, FBG has refused without any justification to remit payment of the Disputed Inventory Amount, in breach of its clear, unambiguous, and undisputed obligation to do so under sections 1.5(c), 1.6(b), and 1.7(a) of the SPA.

**C.   FBG's Breaches Are Causing Irreparable Damage to Lumileds.**

52. FBG's willful, intentional breaches of its obligations under the SPA have caused, and continue to cause, severe and irreparable damage to Lumileds. Lumileds is relying on payment of the full amount of the Purchase Price Adjustment to continue to fund its business operations, and FBG's failure to remit payment of the outstanding balance of the Disputed Inventory Amount has created a grave threat to Lumileds's ability to continue as a going concern.

53. In the SPA, FBG expressly acknowledged "that irreparable damage would occur to" Lumileds "if any provision of this Agreement were breached or not performed by" FBG "in accordance with the terms hereof." Exh. 1, SPA § 10.15.

54. FBG therefore agreed that Lumileds "shall be entitled to an injunction or injunctions, specific performance or other equitable relief to prevent breaches of this Agreement by" FBG "and to enforce specifically the terms and provisions of this Agreement, in addition to any other remedy at law or in equity, to which it is entitled." *Id.* And FBG further agreed that it would not oppose any application for an injunction or specific performance "on the basis that the other party has an adequate remedy at law or that an award of specific performance is not an appropriate remedy . . . ." *Id.*

55. Given the foregoing, the irreparable harm that Lumileds indisputably has suffered, and continues to suffer, due to FBG's breaches entitles Lumileds to a preliminary injunction ordering FBG to specifically perform its obligation under sections 1.5(c), 1.6(b), and 1.7(a) to pay the outstanding balance of the Purchase Price Adjustment in full.

**COUNT ONE**

**Declaratory Judgment Pursuant to 28 U.S.C. § 2201**

56. Lumileds incorporates each and every allegation above as if set forth fully in this paragraph.

57. Under sections 1.5(c), 1.6(b), and 1.7(a) of the SPA, FBG is obligated to render payment of the Purchase Price Adjustment set forth in the Final Closing Statement within five Business Days of delivery of the Final Closing Statement, absent "fraud or manifest error" in the Final Closing Statement.

58. In accordance with the terms of the SPA, Deloitte delivered the Final Closing Statement to FBG and Lumileds on November 7, 2024. The Final Closing Statement calculates the Purchase Price Adjustment, in favor of Lumileds, to be $27,230,000. Under Section 1.7(a) of the SPA, FBG was obligated to cause the Purchase Price Adjustment to be paid no later than November 15, 2024.

59. On November 15, 2024, FBG delivered a letter claiming that the Final Closing Statement contained an unspecified "manifest error," which it later clarified was related to the Disputed Inventory Amount.

60. Lumileds has disputed that the Final Closing Statement contains a "manifest error," and the Deloitte Report concluded that the Disputed Inventory Amount was free of any such error in calculating that a downward adjustment of only $50,000 to $70,000 was warranted.

61. FBG nevertheless has refused to pay any portion of the Disputed Inventory Amount, despite Lumileds's demand for payment, presumably on the grounds stated in FBG's November 15, 2024 letter.

62. Accordingly, a controversy of a justiciable nature exists between Lumileds and FBG regarding the Disputed Inventory Amount. Entry of a declaratory judgment pursuant to 28 U.S.C. § 2201 thus is necessary and proper to resolve this controversy.

63. Based upon the foregoing, Lumileds is entitled to a judgment declaring that: (i) no "manifest error" exists in the Final Closing Statement; and (ii) FBG is obligated, under sections 1.5(c), 1.6(b), and 1.7(a) to pay to Lumileds a minimum of $9,616,106, which represents the Disputed Inventory Amount less the maximum downward adjustment of $70,000 set forth in the Deloitte Report.

64. Pursuant to Fed. R. Civ. P. 57, the Court "may order a speedy hearing of a declaratory-judgment action." In consideration of the irreparable harm that Lumileds has suffered, and will continue to suffer, due to FBG's wrongful conduct, Lumileds hereby respectfully requests entry of a judgment in its favor on an expedited basis as provided in Fed. R. Civ. P. 57.

## COUNT TWO

### Breach of Contract – Specific Performance and Damages

65. Lumileds incorporates each and every allegation above as if set forth fully in this paragraph.

66. The SPA is a valid and enforceable contract between Lumileds and FBG.

67. Lumileds has fully performed its obligations under the SPA.

68. FBG materially breached sections 1.5(c), 1.6(b), and 1.7(a) of the SPA in failing to pay the Disputed Inventory Amount totaling $9,686,106, less the adjustment of $50,000 to $70,000 set forth in the Deloitte Report. At a minimum, therefore, FBG owes Lumileds $9,616,106, and that amount is "conclusive, final, nonappealable, incontestable by, and binding upon" FBG. Exh. 1, SPA § 1.6(b).

69. Under Section 10.15 of the SPA, FBG "agree[d] that irreparable damage would occur to [Lumileds] if any provision of this Agreement were breached or not performed by the other party in accordance with the terms hereof." FBG therefore agreed that Lumileds "shall be entitled to an injunction or injunctions, specific performance, or other equitable relief to prevent breaches of this Agreement . . . and to enforce specifically the terms and provisions of this Agreement, in addition to any other remedy, at law or in equity, to which it is entitled."

70. Further, as set forth above, Lumileds has been irreparably damaged, and continues to suffer irreparable damage, as a result of FBG's breaches of its obligations under the SPA.

71. Accordingly, Lumileds is entitled to immediate, specific performance of FBG's obligations under sections 1.5(c), 1.6(b), and 1.7(a) of the SPA to render payment of a minimum of $9,616,106.

72. Lumileds also is entitled to recover the damages it has sustained due to FBG's breaches of the SPA in an amount to be determined at trial, which include but are not limited to out-of-pocket costs that Lumileds has incurred in addressing FBG's baseless claim of "manifest error" with respect to the calculation of the Purchase Price Adjustment.

## **PRAYER FOR RELIEF**

WHEREFORE, Lumileds respectfully requests the following relief:

A. A judgment, pursuant to 28 U.S.C. § 2201, declaring that: (i) no "manifest error" exists in the Final Closing Statement; and (ii) FBG is obligated, under sections 1.5(c), 1.6(b), and 1.7(a) to pay to Lumileds a minimum of $9,616,106, which represents the Disputed Inventory Amount less the maximum downward adjustment of $70,000 set forth in the Deloitte Report;

B. A preliminary injunction ordering FBG to specifically perform its obligation under sections 1.5(c), 1.6(b), and 1.7(a) of the SPA to pay the Disputed Inventory Amount

16

totaling $9,686,106, less the adjustment of $50,000 to $70,000 set forth in the Deloitte Report;

C. Judgment in the amount of actual damages or other relief proven at trial, including all direct or consequential damages, plus all applicable interest, attorneys' fees, and costs of suit; and

D. Such other and further relief as this Court deems just and proper.

Dated: Baltimore, Maryland
December 13, 2024

Respectfully submitted,

DLA PIPER LLP (US)

By: */s/ Brett Ingerman*
    Brett Ingerman

650 S. Exeter Street, Suite 1100
Baltimore, Maryland  21202
410.580.3000
brett.ingerman@us.dlapiper.com

Steven M. Rosato
1251 Avenue of the Americas
New York, New York  10020
212.335.4500
steven.rosato@us.dlapiper.com

*Attorneys for Plaintiff
 Lumileds Holding B.V.*